IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| ROBERT SOPER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-1040-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSION of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Tim Wilborn
Wilborn Law Office, P.C.
P. O. Box 2768
Oregon City, Oregon  97045

       Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

Daphne Banay
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Robert Soper, Jr. brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner.

## BACKGROUND

Soper filed applications for DIB and SSI on May 27, 2004, and April 20, 2005, respectively.  The applications were denied initially and upon reconsideration.  After a timely request for a hearing, Soper, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on December 12, 2006.

On February 6, 2007, the ALJ issued a decision finding that Soper was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

Page 3 - OPINION AND ORDER

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

**FACTS**

I.   Soper's History

Soper was 39 years old on the May 27, 2004 onset date of alleged disability. He has a high school education.

He alleges disability beginning May 27, 2004, the application date, but has elsewhere alleged disability all his life. He claims to suffer from a personality disorder, Asperger's Syndrome, autism, ADHD, and Hepatitis C.

It was first determined that plaintiff had problems when he was 3 1/2 years old. At age 7 he was evaluated for autism and hyperactivity, and placed on medication. He was distracted at school and had violent temper tantrums. One of his doctors remarked that Soper was one of the most hyperactive children he had seen in years. In middle school his IQ was tested and he was determined to have a Full Scale IQ of 133, in the 98th percentile. When he was 15 years old, he attempted suicide. He received counseling, and spent a year and a half at a private special education school.

No records are available from between 1980 and 2001.

Soper was evaluated at a methadone clinic in April of 2001, reporting two years of heroin abuse. He reported a history of alcohol and drug abuse. He tested positive for heroin and cocaine sporadically throughout 2001, 2002, 2003 and 2004.

On August 31, 2004, Duane Kolilis, Ph.D., evaluated Soper at the request of Social Security. He missed his first appointment with Dr. Kolilis, but his girlfriend dropped him off for the second appointment. He appeared disheveled and unshaven, but clean. Dr. Kolilis concluded plaintiff suffered from Asperger's Disorder and polysubstance dependence in early partial remission. He opined that Soper was capable of understanding, remembering and following simple one to two-step instructions.

> However, boredom from an unchallenged superior intellect as well as the features of his personality disorder will, in this examiner's opinion, probably create problems with his ability to sustain concentration and attention, persist in work-related activities, engage in appropriate social interaction, and adapt to changes in routine. Overall attention and concentration *as tested in the quiet environment today* were excellent, but this examiner does not doubt the veracity of his statements regarding distractibility in less structured settings.

Tr. 231 (emphasis in original).

The DDS reviewing doctor, Robert Henry, Ph.D., concluded that plaintiff has moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. He also opined that plaintiff is moderately limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, interacting with the public, being aware of hazards, and setting goals.

Robert John McDevitt, M.D., testified as a nonexamining medical expert at the hearing. He wondered if anyone would hire plaintiff on such a high dose of methadone, or whether plaintiff would be able to "maintain competitive employment." Tr. 290, 294.

Page 6 - OPINION AND ORDER

During his adult life, Soper has played in a band and tuned pianos. He has also played the guitar, the fiddle and sung on the street for between $100 and $300 a month. He had been clean and sober for one and a half years at the time of the hearing, but was on methadone.

II.     The ALJ's Decision

The ALJ concluded Soper suffers from a personality disorder, not otherwise specified, and a history of polysubstance abuse, now in reported remission. However, the ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ concluded that the claimant has the residual functional capacity to understand and perform both simple and complex tasks, has a limited ability to understand and perform multi-step tasks or instructions, is capable of only limited contact with the public, and should avoid concentrated hazards. He has no exertional limitations.

After obtaining the testimony of a VE, the ALJ opined that plaintiff could not perform his past relevant work, but could perform other work in the national economy including kitchen worker and production line assembly worker.

## DISCUSSION

I.      Plaintiff's Credibility

Soper testified that he is unable to work because he is easily distracted, is unable to show up on time, and is unable to finish tasks. He reported that he played with a band, but it fired him. He is able to show up for appointments if he puts it on the calendar of his cell phone. He is able to buy groceries, pay his car insurance, and take care of his apartment. He thinks his apartment should be cleaner. He showers every five to seven days.

Page 7 - OPINION AND ORDER

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

The ALJ rejected Soper's testimony "concerning the intensity, persistence and limiting effects of" his symptoms as not "entirely credible." Tr. 17. The ALJ's entire credibility decision appears to rely on his opinion that Soper has "evidently adopted a lifestyle in which he relies on others to supply his basic needs. He has a history of extensive substance abuse and a dependent style of existence. It does not appear that, for whatever reasons, he has felt the necessity of engaging in ordinary employment to meet his basic needs." Tr. 17-18. The ALJ concluded that Soper's "history of an inability to appear at a job in a timely manner, or persist at work that is

Page 8 - OPINION AND ORDER

personally not highly stimulating, appears to be due to his history of substance abuse and learned behavior." Tr. 18. In addition, the ALJ noted Soper travels, drives, pays bills, plays complicated music, reads extensively, and maintains relationships.

First, none of the activities noted by the ALJ contradict Soper's testimony that he is easily distracted, is unable to show up on time, and is unable to finish tasks since none of these activities require those skills. Second, the ALJ specifically noted Dr. Kolilis' opinion that Soper would have "problems with sustaining, persisting, socializing and adapting to" employment involving only simple one to two-step tasks, which is the only employment the doctor thought Soper was capable of performing. Tr. 17. Soper's testimony is entirely consistent with Dr. Kolilis' opinion, and nothing in Dr. Kolilis' opinion suggests these particular impairments are due to Soper's substance abuse or "learned behavior." Furthermore, the ALJ references nothing in the record that supports his conclusion. Accordingly, the ALJ failed to give clear and convincing reasons for rejecting Soper's testimony.

II.     Medical Evidence

Plaintiff argues the ALJ improperly rejected Dr. Kolilis' opinion, Dr. McDevitt's assessments, and parts of the DDS doctor's assessment.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and

Page 9 - OPINION AND ORDER

convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

    A.    Dr. Kolilis

Dr. Kolilis opined that Soper was capable of understanding, remembering and following simple one to two-step instructions. He noted, however, that Soper would get bored, which would probably affect his ability to concentrate and persist at work. The ALJ noted that Dr. Kolilis opined Soper would have "problems with sustaining, persisting, socializing and adapting" to simple work. Tr. 17. Dr. Kolilis also stated that he "does not doubt the veracity of [Soper's] statements regarding distractibility in less structured settings." Tr. 231.

The Commissioner asserts that the ALJ considered Dr. Kolilis' opinion in forming the RFC. According to that RFC, Soper has the ability to understand and perform both simple and complex tasks, has a limited ability to understand and perform multi-step tasks or instructions, is capable of only limited contact with the public, and should avoid concentrated hazards.

Contrary to the Commissioner's argument, the ALJ's RFC did not account for Soper's need for a highly structured environment, and his problems sustaining concentration and attention at work. Accordingly, the ALJ's RFC did not contain all of Soper's restrictions and

Page 10 - OPINION AND ORDER

limitations, and it is not supported by substantial evidence in the record.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991) (if the RFC does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy).

      B.      Dr. McDevitt

Dr. McDevitt testified as a nonexamining medical expert at the hearing.  He concluded Soper had moderate limitations in activities of daily living, and moderate limitations in maintaining concentration, persistence or pace.  In addition, he stated, "[F]rom the standpoint of functionality, methadone is a fairly potent narcotic, it would produce what he [testified about], weight gain, sleepiness."  Tr. 289.  Dr. McDevitt asserted that Soper's impairment is the "treatment of his drug addiction, and he's impaired, and that would be an issue in terms of his employability."  Tr. 290 (emphasis added).  He wondered if the high dose of methadone Soper was on would "be an issue in terms of his employability" and he questioned whether "anybody would hire him on that much methadone a day[.]"  Id.  He wondered if Soper would "be able to put in a full eight-hour day without going to sleep or needing some accommodation for sleeping[.]"  Id.  He mentioned again that "certainly the methadone interferes in day-to-day activity, it may even interfere in his competitive employment[.]"  Tr. 293.  He later reiterated that although Soper does not meet the "B" criteria, "I did testify that there would be impairment or some difficulty in maintaining competitive employment on the methadone and such."  Tr. 294.

The ALJ stated that Dr. McDevitt "explained that the treatment for the polysubstance abuse, Methadone, complicates the issue of polysubstance abuse as Methadone has side effects.  However, he observed claimant did not appear to exhibit any noticeable side effects."  Tr. 15.

Page 11 - OPINION AND ORDER

Similarly, the ALJ stated, "No source has mentioned any limitations due to this [methadone] treatment, and the medical expert commented specifically that claimant did not exhibit any limitations associated with treatment at the hearing." Tr. 17. The ALJ concluded Dr. McDevitt's testimony "is well supported in the objective record and fully consistent with the functional ability exhibited by the claimant." Tr. 15.

The Commissioner asserts that the ALJ's rejection of Dr. McDevitt's testimony about methadone interfering with employment is implicit in the ALJ's opinion. I disagree with the Commissioner. The ALJ did not reject Dr. McDevitt's testimony; instead, he failed to accurately represent it. Although the ALJ concluded that Dr. McDevitt mentioned no limitations as a result of the methadone, Dr. McDevitt specifically testified several times that methadone would affect Soper's ability to maintain competitive employment. Accordingly, the ALJ's RFC did not contain all of Soper's restrictions and limitations, and it is not supported by substantial evidence in the record.

### C.     DDS Doctor

The DDS reviewing doctor, Dr. Henry, concluded that plaintiff is moderately limited in maintaining social functioning and in maintaining concentration, persistence or pace. He also opined that plaintiff is moderately limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, interacting with the public, being aware of hazards, and setting goals. Plaintiff asserts the ALJ rejected some of these findings without providing any reasoning.

The limitations summarized above are those that Dr. Henry checked in Section I of the Capacity Assessment, and do not constitute the functional capacity assessment. Section III

contains the functional capacity assessment, and in that section Dr. Henry opined Soper is "[c]apable of understanding both simple and detailed tasks but limit[ed] in sustained concentration on multi step tasks and hx easily distractable," "[l]imit direct general public interaction," and "[m]erit VRD placement support and avoid concentrated [exposure] to hazards given hx." Tr. 248.

The ALJ's RFC accounted for Dr. Henry's functional capacity assessment. Accordingly, the ALJ did not err in evaluating Dr. Henry's opinion.

III.     Lay Testimony

Elizabeth Nicholson, a former band member, reported that Soper forgets appointments, is late, lives from moment to moment, has poor attention, has a low frustration level, and is unable to follow a routine. She also reported that he never cleans his apartment, wears the same clothes for days on end, and showers only when reminded. She noted that, as far as she knows, he has never been able to work. She stated he requires constant monitoring to stay on task, and takes a very long time to do things. When they played in the band together, he would get frustrated and blow up, and would disappear for 45 minutes on a 15-minute break. He would miss performances or arrive late. Finally, she stated, "The thing is, I do not think this sabotaging behavior is willful in any way on his part. Instead it seems a genuine defect [sic] of awareness of social mores, times, dates, etc.–he just has no clue how functioning people act." Tr. 114.

Some of these statements are reflected in the ALJ's decision and the ALJ stated, "These reports are considered credible, as the activities of the claimant have been reported and observed." Tr. 16.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ claimed to find Nicholson's reports to be credible, but nowhere reflected in the RFC is Nicholson's report that Soper forgets appointments, shows up late, and requires constant monitoring. Accordingly, the ALJ erred when he failed to give reasons for rejecting portions of Nicholson's report.

IV.   Remedy

The ALJ failed to give clear and convincing reasons for rejecting Soper's testimony, erred in his discussion of Dr. Kolilis' opinion, misrepresented Dr. McDevitt's testimony, and failed to give reasons germane to Nicholson's testimony for rejecting portions of it.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id.

The ALJ failed to provide legally sufficient reasons for rejecting the evidence noted above. Furthermore, there are no issues to be resolved before a determination of disability can be made. Dr. Kolilis accepted Soper's report that he is highly distractible outside of a highly structured environment, but opined that he would have trouble sustaining employment that requires only simple tasks. Dr. McDevitt testified repeatedly that Soper's methadone treatment would make it difficult for Soper to maintain employment. Both Soper and Nicholson described Soper's inability to appear on time, or at all, requiring constant monitoring to stay on task, and taking a very long time to do things. The vocational expert testified that an employee who is unreliable, and shows up late two days a month would not be able to sustain employment. It is clear from the record that were the ALJ to credit all of this evidence, he would be required to find Soper disabled. Accordingly, I remand for a finding of disability.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this ___9th___ day of September, 2008.

                                               /s/ Garr M. King
                                              Garr M. King
                                              United States District Judge